IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO. 13-CV-607


| | |
|---|---|
| CALLA WRIGHT, WILLIE J. BETHEL, AMY T. LEE, AMYGAYLE L. WOMBLE, BARBARA VANDENBERGH, JOHN G. VANDENBERGH, AJAMU G. DILLAHUNT, ELAINE E. DILLAHUNT, LUCINDA H. MACKETHAN, WILLIAM B. CLIFFORD, ANN LONG CAMPBELL, GREG FLYNN, BEVERLEY S. CLARK, CONCERNED CITIZENS FOR AFRICAN-AMERICANCHILDREN, and the RALEIGH WAKE CITIZENS ASSOCIATION, ) ) ) ) ) ) ) ) ) ) | |
| ) | COMPLAINT |
| ) | |
| *Plaintiffs,* ) | EQUITABLE RELIEF SOUGHT |
| ) | |
| *vs.* ) | |
| ) | |
| THE STATE OF NORTH CAROLINA, and THE WAKE COUNTY BOARD OF ELECTIONS ) ) | |
| ) | |
| *Defendants.* ) | |

Plaintiffs, complaining of Defendants, allege and say:

1.       Following the release of the P.L. 94-171 redistricting data from the 2010 Census,

the Wake County School Board, as authorized by state law, undertook the responsibility to

redraw its election district lines to bring them into compliance with the one-person, one-vote

standard.  In the early months of 2011, the Wake County School Board engaged the Shanahan

Law Group to draw alternative redistricting plans and advise the Board.  A new majority had

taken over the Board in 2009, implementing a controversial new student assignment policy and

the 2011 redistricting process was subjected to intense public scrutiny.  The Board had a public

hearing on May 10th, 2011 and, on May 17th, 2011, by a vote of five to three, the Wake County

School Board adopted a new redistricting plan that had an overall deviation of 1.66%, with five of the nine districts having a deviation of under .5%. Although the Republican majority on the Board supported this plan, the new Board elected in the fall of 2011 no longer included a majority of Republican members. In 2013, the North Carolina General Assembly, over the objection of a majority of the Wake County School Board, passed a local bill making numerous changes in the method of election, including changing from nine single-member districts to seven single-member districts with two "super-districts" that divide the county like a donut, with an inner, urban super-district and an outer, rural super-district, to be implemented in 2016. The bill also prohibits the Wake County School Board from making any further changes in its method of election until 2021 and then only to correct population imbalances. The two super-districts have an overall deviation of 9.8% and the seven single-member district plan has an overall deviation of 7.11%.

2.      This is an action pursuant to 42 U. S. C. § 1983 to secure equitable relief for the unlawful deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States and the Constitution and laws of the State of North Carolina. Plaintiffs are citizens and residents of Wake County who will suffer an unconstitutional dilution and debasement of the strength of their vote, as a result of the implementation of Session law 2013-110, a local bill enacted by the North Carolina General Assembly. The new redistricting plan for the Wake County School Board created by the local bill overpopulates, without justification, certain districts, causing the vote of Plaintiffs living in those overpopulated districts to be weighted less than votes of citizens in districts that are unjustifiably under-populated. Plaintiffs will therefore be denied equal protection of the laws and denied the equal right to vote in violation of the equal protection clauses of the United States and North Carolina Constitutions.

2

Plaintiffs request this Honorable Court to grant relief in the form of a declaratory judgment and a preliminary, mandatory injunction requiring the Defendants to conduct lawful elections for the Wake County Board of Education using an election method and districting system which complies with the requirements of the Fourteenth Amendment to the United States Constitution and Article I, §19 of the North Carolina Constitution.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1357; and 42 U.S.C. §§ 1983 and 1988.

4.      This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6.      Plaintiff CALLA WRIGHT is a Wake County registered voter who lives at 613 Cooper Road, Raleigh, NC 27610.  Under the 2011 Wake School Board redistricting plan, she lived in District 4.  Under S.L. 2013-110, she lives in Numbered District 4 and Lettered District A.

7.      Plaintiff WILLIE J. BETHEL is a Wake County registered voter who lives at 3101 Kingstree Court, Raleigh, NC 27610.  Under the 2011 Wake School Board redistricting plan, she lived in District 4.  Under S.L. 2013-110, she lives in Numbered District 4 and Lettered District A.

8.      Plaintiff AMY T. LEE is a Wake County registered voter who lives at 1215 Ivy Lane, Raleigh, NC 27609.  Under the 2011 Wake School Board redistricting plan, she lived in District 3.  Under S.L. 2013-110, she lives in Numbered District 3 and Lettered District B.

3

9.      Plaintiff AMYGAYLE L. WOMBLE is a Wake County registered voter who lives at 101 Kings Fork Road, Cary, NC 27511.  Under the 2011 Wake School Board redistricting plan, she lived in District 9.  Under S.L. 2013-110, she lives in Numbered District 6 and Lettered District A.

10.     Plaintiff BARBARA VANDENBERGH is a Wake County registered voter who lives at 3424 Huckabay Circle, Raleigh, NC 27612.  Under the 2011 Wake School Board redistricting plan, she lived in District 6.  Under S.L. 2013-110, she lives in Numbered District 5 and Lettered District A.

11.     Plaintiff JOHN G. VANDENBERGH is a Wake County registered voter who lives at 3424 Huckabay Circle, Raleigh, NC 27612.  Under the 2011 Wake School Board redistricting plan, he lived in District 6.  Under S.L. 2013-110, he lives in Numbered District 5 and Lettered District A.

12.     Plaintiff AJAMU G. DILLAHUNT is a Wake County registered voter who lives at 2316 Keith Drive, Raleigh, NC 27610.  Under the 2011 Wake School Board redistricting plan, he lived in District 4.  Under S.L. 2013-110, he lives in Numbered District 4 and Lettered District A.

13.     Plaintiff ELAINE E. DILLAHUNT is a Wake County registered voter who lives at 2316 Keith Drive, Raleigh, NC 27610.  Under the 2011 Wake School Board redistricting plan, she lived in District 4.  Under S.L. 2013-110, she lives in Numbered District 4 and Lettered District A.

14.     Plaintiff LUCINDA H. MACKETHAN is a Wake County registered voter who lives at 3632 Lubbock Drive, Raleigh, NC 27612.  Under the 2011 Wake School Board

4

redistricting plan, she lived in District 6. Under S.L. 2013-110, she lives in Numbered District 5 and Lettered District A.

15. Plaintiff WILLIAM B. CLIFFORD is a Wake County registered voter who lives at 1113 Lands End Court, Raleigh, NC 27606. Under the 2011 Wake School Board redistricting plan, he lived in District 5. Under S.L. 2013-110, he lives in Numbered District 3 and Lettered District A.

16. Plaintiff ANN LONG CAMPBELL is a Wake County registered voter who lives at 1117 Baslow Brook Court, Raleigh, NC 27614. Under the 2011 Wake School Board redistricting plan, she lived in District 3. Under S.L. 2013-110, she lives in Numbered District 1 and Lettered District B.

17. Plaintiff GREG FLYNN is a Wake County registered voter who lives at 2826 Barmettler Street, Raleigh, NC 27607. Under the 2011 Wake School Board redistricting plan, he lived in District 6. Under S.L. 2013-110, he lives in Numbered District 3 and Lettered District A.

18. Plaintiff BEVERLY S. CLARK is a Wake County registered voter who lives at 719 Graham Street, Raleigh, NC 27605. Under the 2011 Wake School Board redistricting plan, she lived in District 6. Under S.L. 2013-110, she lives in Numbered District 3 and Lettered District A.

19. Plaintiff CONCERNED CITIZENS FOR AFRICAN-AMERICAN CHILDREN (CCAAC) is a community-based organization dedicated to teaching parents about the policies, procedures, and laws that govern the children who attend the Wake County Public School System. The legal name of the organization is Coalition of Concerned Citizens for African-American Children, Inc., a non-profit corporation, incorporated in the state of North Carolina.

The organization was formed in 2003. As a parent-based organization, CCAAC works to ensure that all children receive equitable educational opportunities that will lead them to become productive citizens.

20. Plaintiff RALEIGH WAKE CITIZENS ASSOCIATION (RWCA) is nonpartisan, political advocacy organization based in Raleigh, NC. The goal of the organization is to empower minorities in Raleigh and Wake County. Founded in 1932, the Raleigh Wake Citizens Association is Raleigh's oldest African-American political organization, and one of the oldest and most influential in North Carolina. Since its beginning, the RWCA's purpose has been to protect, encourage, educate, and help the citizens of Raleigh and Wake County in their civic, economic, social, educational and political advancement. Members are active in issues of immigration reform, homelessness, economic development, eliminating health disparities and advocating for high quality education for all children. The organization also continues to endorse in political races and educate voters, sponsor candidate forums, and more.

21. The individual Plaintiffs have standing to bring this action because they are personally aggrieved in that they live in districts that are unjustifiably overpopulated. Thus, their votes will carry less weight than their Wake County counterparts who live in underpopulated districts.

22. The organizational Plaintiffs have standing to bring this action because they have organized and worked in Wake County to ensure that all students have access to a high quality education, regardless of their socioeconomic background. The confusing and non-compact nature of the electoral scheme in S.L. 2013-110 will make it harder for these organizations to educate Wake County parents about their elected officials. Additionally, the policy results of S.L. 2013-110 will frustrate the mission of the organizational plaintiffs, and the implementation

6

of the law will require the organizational plaintiffs to expend more resources to educate parents and advocate for the policies they support.

23.     This action is brought timely in that the new districts created by the law will not be used until 2016.  The timing of this action therefore provides the Court the opportunity to direct the General Assembly to remedy the one-person, one-vote equal protection violations existing under the scheme as now required by state law prior to significant and potentially detrimental reliance on that scheme by plaintiffs, defendants and potential candidates.

24.     Defendant State of North Carolina is a sovereign state in the United States.

25.     Defendant Wake County Board of Elections is a distinct legal entity, with offices in Wake County, created by state statute and empowered by state law with the responsibility of administering elections for the Wake County Board of Education.

## FACTUAL ALLEGATIONS

### Background on Wake County Board of Education and Its Policies

26.     Wake County experienced tremendous growth from 2000 to 20010.  The total population of the county was 627,846 in 2000, and it was 900,993 in 2010—an increase of 43.51%.  The student population in the Wake County Public School System (WCPSS) likewise exploded during the same time frame.  The number of students in the WCPSS in the 2000-2001 school year was 97,691, and but that number rose to 143,289 in the 2010-2011 school year—an increase of 46.68%.

27.     Beginning in the year 2000, the Wake County Board of Education implemented a racially-neutral student assignment policy that prioritized socioeconomic diversity in schools. Prior to that, Wake County had used a race-conscious student assignment diversity policy.  The shift to a socioeconomic diversity policy was based a large body of research indicating that

7

students learn better in schools with an economically heterogeneous student body rather than in high poverty schools. Supported by local and national research showing integrated student environments as one characteristic of healthy schools, this plan set a target that no more than 40 percent of students at a given school should be economically disadvantaged, as measured by a student's eligibility for free or reduced-price lunch, and that no more than 25 percent of students should have scored below grade level on statewide reading tests. This socioeconomic diversity assignment policy was highly-regarded on a national level, and was effective in ensuring that students with limited economic resources were not forced to attend high-poverty schools simply because of where they lived.

28.     Although the Wake County School Board elections are non-partisan, candidates favoring conservative education policies won control of the Board in the 2009.

29.     That new majority on the school board began immediately dismantling the system's 10-year-old socioeconomic diversity policy in favor of a neighborhood schools student assignment policy, based on students' proximity to schools. The majority on the board selected close to 700 students for an unplanned school reassignment for the 2010-2011 school year, and those reassignments were intended to preview the "neighborhood schools plan" that would be further implemented in the following years. Many of the students that the majority on the board reassigned in that first phase of implementing the "neighborhood schools plan" were both racially identifiable and economically homogenous, and these students were moved into schools with greater percentages of students that reflected their racial identity and socioeconomic status.

30.     In the 2011 elections for Wake County Board of Education, the voters in Wake County flatly and overwhelmingly rejected this move away from a priority of socioeconomic diversity in student assignment. The voters ousted the members of the school board who had

supported the "neighborhood schools plan" and elected candidates who ran on promises of recommitting to socioeconomic diversity in Wake County schools.

**Background on Wake County Board of Education Redistricting**

31.     Because of the tremendous population growth in the county in the preceding decade, the districts from which members of the Wake County Board of Education were elected were hugely out-of-balance with each other and needed to be redrawn.  The overall population deviation between the districts was 47.89%.  Thus, in order to comply with the federal constitution's demand for "as nearly equal as practicable" populations in the districts, the Board of Education had to redraw the district lines to even out the population.

32.     The 2009 majority of the Board of Education—the majority that favored the "neighborhood schools plan" over a socioeconomic diversity plan—controlled the board during the post-2010 redistricting process.

33.     The Wake County Board of Education spent $35,000 to hire the Shanahan Law Group to redraw the district lines following the 2010 Census.

34.     The map below depicts the Board of Education districts as redrawn in 2011 (or the "current districts.")

9



Wake County School Board
Current Districts

35.     The overall population deviation of this plan was 1.66%, with the highest deviation from ideal population being 0.93% and the lowest deviation from ideal population being -0.73%.

36.     The following chart contains the population deviations in each of the districts in 2011 redistricting plan:

| District | Deviation | % Deviation |
|----------|-----------|-------------|
| 1 | -434 | -0.43% |
| 2 | 936 | 0.93% |
| 3 | 770 | 0.77% |
| 4 | 16 | 0.02% |
| 5 | -691 | -0.69% |
| 6 | 199 | 0.20% |
| 7 | -733 | -0.73% |
| 8 | 96 | 0.10% |
| 9 | -156 | -0.16% |

37.     The 2011 redistricting plan was duly enacted by the 2009 majority of the Board, and elections were conducted under this plan in the fall of 2011.

38.     In those 2011 elections, control of the board switched to those favoring progressive education policies.

39.     The current Board of Education is comprised of 5 registered Democrats, 3 registered Republicans, and one unaffiliated member.

**Senate Bill 325**

40.     Senators Neal Hunt and Chad Barefoot, Wake County Republicans, introduced Senate Bill 325 (now S.L. 2013-110) on March 13, 2013.

41.     On March 25, 2013, Senate and House members of the Wake County delegation hosted a public hearing at the Legislative Office Building. The hearing was designed to receive constituent feedback on a number of Wake County local bills pending before the General Assembly. Although a number of bills were discussed at the hearing, the bill that received the most commentary from Wake County voters in attendance was Senate Bill 325. Every speaker at the public hearing who addressed Senate Bill 325 spoke out against it.

42.     On April 23, 2013, the Wake County Board of Education passed a resolution reaffirming its support for the current election process for its members and detailing the specific reasons while the current electoral scheme should be kept in place.

43.     The North Carolina General Assembly passed local bill Senate Bill 325 on June 13, 2013, upon which it was automatically ratified, without the governor's signature, as Session law 2013-110. (Copy attached and incorporated herein as Exhibit 1.)

44.     No Democratic member of the legislature voted for it, and no African-American member of the legislature voted for it.

45.     Session law 2013-110 reduces the number of single-member districts and adds two super-districts. Under Session Law 2013-110, Wake County is divided into seven single-member districts (numbered Districts 1 through 7), each of which will elect a member to the Board of Education. The County is also divided into two super-districts (designated as Districts A and B), which each elect a member to the Board of Education. Thus, every voter will vote for a representative from one numbered district and one lettered district.

46.     Session law 2013-110 also establishes the geographic composition of the 9 districts, and prohibits the Board of Education from altering their own structure as would otherwise be allowed under state law.  The Wake County Board of Education is not authorized to make changes to the plan for electing members of the Board until 2021, and then only to correct population imbalances.  The board is not authorized to shorten the length of any terms in place when it redraws in 2021.

47.     Session law 2013-110 specifies that in 2013, members elected to fill the expired terms in Districts 1, 2, 7, and 9 will serve only three-year terms, which will expire on December 1, 2016.

48.     Session Law 2013-110 further specifies that Board of Education members elected to four-year terms in 2011, from Districts 3, 4, 5, 6 and 8, will have those terms extended, and their terms will now expire on December 1, 2016

49.     Starting in November of 2016, and quadrennially thereafter, members for all of the now seven single-member districts shall be elected for four-year terms.  In 2016, the two members of the super-districts (Districts A and B) will be elected for two-year terms.  In 2018, and quadrennially thereafter, members for Districts A and B shall be elected for four-year terms.

50.     Session law 2013-110 also states that the qualified voters of each district shall elect the member of the board for that district.   Candidates must reside in the district for which they seek to be elected.

51.     The following map depicts the numbered districts under S.L. 2013-110, and the incumbent addresses are marked:

13



Wake County School Board
S325 Numbered Districts

52.     The following map depicts the lettered districts under S.L. 2013-110, and the incumbent addresses are marked:



Wake County School Board
S325 Lettered Districts

53. The overall population deviation in plan created by S.L. 2013-110 is 9.8% for the Lettered Districts plan and 7.11% for the Numbered Districts plan. Thus, the entire plan's overall population deviation is 9.8%--up from 1.66% in the plan drawn in 2011.

54. The following chart contains the population deviations in each of the districts in S.L. 2013-110:

| District | Deviation | % Deviation |
|----------|-----------|-------------|
| 1 | 3550 | 2.76% |
| 2 | -5398 | -4.19% |
| 3 | 4678 | 3.63% |
| 4 | 1591 | 1.24% |
| 5 | 239 | 0.19% |
| 6 | -174 | -0.14% |
| 7 | -4484 | -3.48% |
| A | 22088 | 4.90% |
| B | -22088 | -4.90% |

55. Districts 3 and A are substantially over-populated, particularly in comparison to Districts 2, 7 and B, which are substantially under-populated. Thus, the votes of voters in Districts 3 and A carry substantially less weight than do the votes cast by voters in Districts 2, 7 and B.

56. There are nearly 45,000 more Wake County voters in District A than there are in District B.

57.     Using election results from recent presidential elections is a common means of determining the political preferences/performance of an electoral district.

58.     In the November 2012 general election, President Obama won Wake County with 55% of the vote.  In 2008, he won the county with 56.7% of the vote.

59.     Under the 2011 plan, using reconstituted 2012 election data, President Obama won a majority of the vote in 5 of the 9 Board of Education districts, and won a plurality of the vote in another.  Governor Romney won a majority of the vote in 3 of the Board of Education districts.

60.     Under S.L. 2013-110, President Obama would have won a majority in only 4 of the 9 districts (1 of the 2 lettered super-districts and 3 out of 7 of the numbered districts). Governor Romney would have won a majority in 5 of the 9 districts.

61.     The current members of the Wake County Board of Education, the districts they were elected from and the districts where they now reside are as follows:

| Name | Elected in District | Expires | New District |
|------|---------------------|---------|--------------|
| Tom Benton | 1 | 2013 | 1, B |
| John Tedesco | 2 | 2013 | 1, B |
| Kevin Hill | 3 | 2015 | 1, B |
| Keith Sutton | 4 | 2015 | 4, A |
| Jim Martin | 5 | 2015 | 6, B |
| Christine Kushner | 6 | 2015 | 5, A |
| Deborah Prickett | 7 | 2013 | 2, B |
| Susan | 8 | 2015 | 6, B |

18

| Evans | | | |
|---|---|---|---|
| Bill Fletcher | 9 | 2013 | 6, B |

62.     The effect of 2011-110 makes clear its intent: to disfavor incumbents who are registered Democrats and support progressive education policies.  In what is essentially a game of musical chairs, incumbents who support conservative education policies will have a seat when the music stops, while 3 incumbents who favor progressive education policies will find themselves in Republican-leading districts with conservative incumbents.

63.     Proponents of the law have offered no justification for the deviations employed in the new plan.  Those deviations do not further any legitimate redistricting criteria.

64.     The lettered and numbered districts in S.L. 2013-110 are visually and mathematically less compact than the districts in the 2011 plan.

65.     The lettered and number districts split 21 unique precincts in the county (11 of which are split in both the lettered and the numbered plans), while the 2011 plans split only 11 precincts.

66.     The only goal that the new plan accomplishes is to further Republican interests and advance conservative agenda policies—over the wishes of the Wake County electorate. Under federal jurisprudence, this is not a legitimate state interest that justifies the population deviations.

67.     Plaintiffs will suffer immediate harm from having to participate on an unequal footing in an election system that deprives them of equal representation on the Board of Education.

19

68. Violation of Plaintiffs' equal protection rights to vote and participate in the political process on equal grounds with all other voters, as guaranteed by the state and federal constitutions, is irreparable harm.

## FIRST CLAIM FOR RELIEF

(Denial of Equal Protection under the 14th Amendment to the U.S. Constitution)

69. Plaintiffs rely herein upon all of the paragraphs of this Complaint.

70. The equal protection clause of the Fourteenth Amendment guarantees the principle of one-person, one-vote—that is, the equal weighting of every person's vote.

71. The one-person, one-vote requirement applies to the method of electing representatives to the Wake County Board of Education.

72. By creating an election system that unjustifiably weights the vote of some voters in the county much more heavily than the vote of other voters in the county, S.L. 2013-110 completely and fundamentally violates the one-person, one-vote requirement established by the Fourteenth Amendment.

73. The General Assembly has the responsibility to either permit the Wake County Board of Education to correct this fundamental imbalance, or, to enact further local legislation creating a method of election that does not violate the one-person, one-vote requirement.

74. Plaintiffs will be harmed by having their votes denied, or diluted, as a result of the terms and provisions of Session Law 2013-110.

75. Candidates, election officials and voters will be harmed by proceeding with elections under a system that is unconstitutional.

## SECOND CLAIM FOR RELIEF

(Denial of Equal Protection under Article I, §19 of the North Carolina Constitution)

76.     Plaintiffs rely herein upon all of the paragraphs of this Complaint.

77.     The equal protection clause of the Article I, §19 of the North Carolina Constitution guarantees the principle of one-person, one-vote and demands that the vote of each citizen be valued equally.

78.     The one-person, one-vote requirement applies to the method of electing representatives to the Wake County Board of Education.

79.     By creating an election system that unjustifiably weights the vote of some voters in the county much more heavily than the vote of other voters in the county, S.L. 2013-110 completely and fundamentally violates the demands of the state constitution that each voter be treated equally.

80.     The General Assembly has the responsibility to either permit the Wake County Board of Education to correct this fundamental imbalance, or, to enact further local legislation creating a method of election that does not violate the one-person, one-vote requirement.

81.     Plaintiffs will be harmed by having their votes denied, or diluted, as a result of the terms and provisions of Session Law 2013-110.

82.     Candidates, election officials and voters will be harmed by proceeding with elections under a system that is unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask that the Court:

1. Declare that the method of election established for the Wake County Board of Education by Session Law 2013-110 violates the equal protection clauses of the 14th Amendment to the United States Constitution and Article 1, §19 of the North Carolina Constitution; and

21

2.  Declare that the rights and privileges of Plaintiffs will be irreparably harmed without the intervention of this Court to secure those rights for the exercise thereof in a timely and meaningful manner; and

3.  Enter a preliminary injunction, and a permanent injunction enjoining the Defendants, their agents, officers and employees, from enforcing or giving any effect to the provisions of Session Law 2013-110 that relate to the method of election of members of the Wake County Board of Education; and

4.  Declare that the unless the North Carolina General Assembly acts to promulgate a lawful method of election for the Wake County Board of Education, constitutional state laws require that the Wake County Board of Education itself adopt a redistricting plan that does comply with the one-person, one-vote requirement of the state and federal constitutions; and

5.  Make all further orders as are just, necessary and proper to preserve Plaintiffs' rights to participate equally in elections to the Board of Education; and

6.  Award Plaintiffs their costs, disbursements and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988; and

7.  Grant such other relief as the Court deems just and proper.

Dated this the  22nd day of August, 2013.

_____/s/ Allison J. Riggs_____
Anita S. Earls (State Bar # 15597)
Allison Riggs (State Bar # 40028)
Clare R. Barnett (State Bar #42678)
Southern Coalition for Social Justice
1415 Highway 54, Suite 101

22

Durham, NC 27707
Telephone: 919-323-3380 ext. 115
Facsimile: 919-323-3942
E-mail: anita@southerncoalition.org

*Counsel for Plaintiffs*