| | |
|---|---|
| CALLA WRIGHT, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)    **ORDER**<br>)<br>THE STATE OF NORTH CAROLINA, and )<br>THE WAKE COUNTY BOARD OF )<br>ELECTIONS, )<br>)<br>Defendants. ) | |

This matter is before the Court on defendant State of North Carolina's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) [DE 29], defendant Wake County Board of Elections' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [DE 27], and plaintiffs' motion for leave to amend complaint pursuant to Federal Rule of Civil Procedure 15(a). The motions are ripe for adjudication. For the reasons stated herein, defendant State of North Carolina's motion to dismiss is GRANTED, defendant Wake County Board of Elections' motion to dismiss is GRANTED, and plaintiff's motion to amend is DENIED AS FUTILE.

## BACKGROUND

Thirteen individual citizens of Wake County, North Carolina and two associations of citizens initiated this action by filing, through counsel, a complaint on August 22, 2013. The complaint asserts claims under 42 U.S.C. § 1983 for defendants' alleged violation of plaintiffs' equal protection rights under both the United States and North Carolina Constitutions resulting from the North Carolina General Assembly's enactment of S.L. 2013-110, a local bill implementing a new redistricting plan for electing members of the Wake County School Board.

Plaintiffs' complaint seeks relief in the form of a declaratory judgment and a preliminary, mandatory injunction requiring the defendants to conduct lawful elections for the Wake County Board of Education using an election method and districting system which complies with the requirements of the Fourteenth Amendment to the United States Constitution and Article 1, § 19 of the North Carolina Constitution.

## DISCUSSION

I.    THIS COURT'S JURISDICTION OVER THE STATE.

The State of North Carolina has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that this Court lacks jurisdiction over the State in this case because the State has immunity under the Eleventh Amendment to the United States Constitution. [DE 29]. It is firmly established in Supreme Court precedent that "a State may not be sued in federal court by one of its own citizens." *California v. Deep Sea Research*, 523 U.S. 491, 501 (1998); *see also Hans v. Louisiana*, 134 U.S. 1 (1890). Plaintiff named the State as a defendant with the hope that the state would consent to federal jurisdiction and waive its immunity. [DE 35 at 21]; *Lapides v. Bd. of Regents of the Univ. Syst. of Ga.*, 535 U.S. 613, 619 (2002). However, as the State has raised Eleventh Amendment immunity as a defense, plaintiffs agree that their claim cannot proceed against the state. [DE 35 at 21]; [DE 33]. This Court lacks jurisdiction over the State here and therefore defendant State of North Carolina's motion to dismiss pursuant to Rule 12(b)(1) is granted.

II.    PLAINTIFFS' MOTION TO AMEND.

Recognizing that the State has Eleventh Amendment immunity to suit here, plaintiffs seek to amend their complaint by dropping the State as a defendant and adding North Carolina

Governor Patrick McCrory, North Carolina Senate President Pro Tem Phil Berger, and North Carolina House Speaker Thom Tillis as defendants in their official capacities. [DE 33].

Under FED. R. CIV. P. 15(a), "a party may amend the party's pleadings only by leave of court or by written consent of the parties; and leave to amend a complaint shall be freely given when justice so requires." "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citations and quotations omitted). A proposed amendment is futile when "it advances a claim or defense that is legally insufficient on its face." *Joyner v. Abbott Labs.*, 674 F. Supp. 185, 190 (E.D.N.C. 1987). In this instance, plaintiffs' amendment would be futile.

Courts have consistently permitted suits against state actors as a way of enjoining a state from unconstitutional action. *Ex Parte Young*, 209 U.S. 123, 159–60 (1908). However, "[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act." *Id.* at 157. Here, as in *Fitts v. McGhee*, none of the individual parties named in the proposed amended complaint "have been charged by law with any special duty" in connection with Session Law 2013-110. 172 U.S. 516, 529 (1899).

In North Carolina, the State Board of Elections has general supervision over elections in the state. N.C. Gen. Stat. § 162-22(a). The State Board of Elections appoints all members of the county boards of elections and advises them as to the proper methods of conducting elections. N.C. Gen. Stat. § 163-22(c). The county boards of elections oversee the elections occurring in their counties. N.C. Gen. Stat. § 163-33. It is clear from this review of North Carolina law that

the enforcement of Session Law 2013-110 falls to the Wake County Board of Elections. No enforcement power of the law resides within the Governor, the House Speaker, or the Senate President Pro Tem. To enjoin the implementation of this law, the Court would need only to issue an injunction against the Wake County Board of Elections. No other parties are involved with the implementation and enforcement of Session Law 2013-110 and therefore no other parties are proper defendants to this suit even under the *Ex Parte Young* doctrine.

Plaintiffs claim that if the State officers are not part of this suit in their official capacities, there is no mechanism to force a constitutionally valid districting plan to be created in the event the implementation of Session Law 2013-110 is enjoined. However, North Carolina has provisions for such an instance that would ensure valid elections could be held. In the event any State election law or form of election of any local board of education is held unconstitutional or invalid by a federal court, the State Board of Elections has authority to make "reasonable interim rules and regulations with respect to the pending primary or election as it deems advisable." N.C. Gen. Stat. § 163-22.2. Further, the local board of education is not to revise district boundaries after the General Assembly has ratified an act establishing district boundaries until a new federal census is taken "except that the board may make an earlier revision of district boundaries. . . if it must do so to comply with a court order." N.C. Gen. Stat. § 115C-37(i).

Because the Governor, House Speaker, and Senate President Pro Tem are not proper parties in this suit, an amendment that casts them as defendants would be futile. Accordingly, plaintiffs' motion for leave to amend their complaint is denied.

    III.    DEFENDANTS' 12(b)(6) MOTION TO DISMISS.

Defendant Wake County Board of Education has moved to dismiss under FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be

granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Accordingly, to survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." *Id.* at 555, 570.

Defendants argue that plaintiffs' complaint fails to state a claim for which relief may be granted for two reasons. First, they argue that the population deviations between the challenged districts are *de minimis* under both United States Supreme Court and North Carolina Supreme Court precedent. Second, they argue that plaintiffs' complaint states a claim for political gerrymandering which is a nonjusticiable political question.

    A.    Fourteenth Amendment Claim.

In *Baker v. Carr*, 369 U.S. 186 (1962), *Reynolds v. Sims*, 377 U.S. 533 (1964), and their progeny, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that districts for the United States House of

Representatives and for state legislatures must achieve some measure of population equality. The Supreme Court has also made clear that the one person, one vote rule also applies to local government districts. *Avery v. Midland Cnty.*, 390 U.S. 474, 480–81 (1968). The one person, one vote requirement does not require absolute equality of population between legislative or local government districts. *Brown v. Thomson*, 462 U.S. 835, 842–43 (1983).

> [M]inor deviations from mathematical equality among state legislative districts are insufficient to make out a prima facie case of invidious discrimination under the Fourteenth Amendment so as to require justification by the State. Our decisions have established, as a general matter, that an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations. A plan with larger disparities in population, however, creates a prima facie case of discrimination and therefore must be justified by the State.

*Id.* (citations and quotations omitted). The Fourth Circuit has held that

> [t]he 10% *de minimis* threshold recognized in *Brown* does not completely insulate a state's districting plan from attack of any type. Instead, that level serves as the determining point for allocating the burden of proof in a one person, one vote case. . . . [I]f the maximum deviation is less than 10%, the population disparity is considered *de minimis* and the plaintiff cannot rely on it alone to prove invidious discrimination or arbitrariness. To survive summary judgment, the plaintiff would have to produce further evidence to show that the apportionment process had a "taint of arbitrariness or discrimination." *Roman v. Sincock*, 377 U.S. [695,] 710 [(1964)]. In other words, for deviations below 10%, the state is entitled to a presumption that the apportionment plan was the result of an "honest and good faith effort to construct districts . . . as nearly of equal size as is practicable." *Reynolds v. Sims*, 377 U.S. at 577. However this is a rebuttable presumption.

*Daly v. Hunt*, 93 F.3d 1212, 1220 (4th Cir. 1996). Here the plaintiffs allege that the maximum deviation of the numbered districts is 7.11% and that the maximum deviation of the lettered districts is 9.8%. [DE 1 ¶ 53–54]. Accordingly, plaintiffs have failed to state a *prima facie* case for a violation of the Fourteenth Amendment's one person, one vote requirement. Therefore, in order to rebut the presumption of constitutionality and to survive a motion to dismiss, plaintiffs must allege facts showing that the population deviations here are tainted by arbitrariness or discrimination. *Sincock*, 377 U.S. at 710.

Plaintiffs fail to do so. Plaintiffs allege that defendants have drawn districts designed to further one political party's advantage by purposeful deviations between urban and rural areas and pairings of Democratic incumbents. [DE 1 ¶ 66]. They also allege that the numbered districts in Session Law 2013-110 are visually and mathematically less compact than the districts in the 2011 plan. [*Id.*]. Finally, plaintiffs allege that the plan disregards precincts, as the new districts split twenty-one unique precincts in Wake County, while the 2011 plan only split eleven. [*Id.*].

First, the Court notes that the differences in population disparities between the old 2011 plan and new Session Law 2013-110 plan are of no consequence. The Supreme Court has expressly rejected the argument that the possibility of drafting a "better" plan alone is sufficient to establish a violation of the one person, one vote requirement.

> We think that appellees' showing of numerical deviations from population equality among the Senate and House districts in this case failed to make out a prima facie violation of the Equal Protection Clause of the Fourteenth Amendment, whether those deviations are considered alone or in combination with the additional fact that another plan could be conceived with lower deviations among the State's legislative districts.

*Gaffney v. Cummings*, 412 U.S. 735, 740–41 (1973). This is especially so here because the new plan differs in substance from the old plan in that it consists of seven districts and two super districts for which each voter has two votes whereas the old plan had nine districts for which each voter had one vote. It might be expected that the new system would have different population disparities than the old, and the fact that the new disparities are larger than the old disparities but still less than 10% is insufficient to suggest a "taint of arbitrariness or discrimination." *Sincock* 377 U.S. at 710.

7

Case 5:13-cv-00607-D   Document 38   Filed 03/17/14   Page 7 of 12

The remainder of plaintiffs' alleged facts state a political gerrymandering claim.[1] Although plaintiffs dress the claim in the language of a one person, one vote claim, it is actually not so. Because the Supreme Court found political gerrymandering claims to be nonjusticiable in *Vieth v. Jubelirer*, 541 U.S. 267 (2004), plaintiffs have not stated a claim upon which relief may be granted and their claim must be dismissed.

All of the factors which plaintiffs say point to taint of arbitrariness or discrimination lead back to politics. Plaintiffs allege a favoritism of rural areas of the county over urban areas and they allege the targeting of democratic incumbents by the placement of three democratic incumbents into two republican leaning districts with republican incumbents. However, plaintiffs admit that the end result is political advantage. [DE 35 at 15–16]. Plaintiffs do not argue that the population deviations are a result of discrimination on the basis of race or some other suspect classification. They claim only an impermissible political bias.

Plaintiffs argue that this political advantage is not a traditional legitimate state interest or redistricting factor, and is therefore evidence that Session Law 2013-110 is tainted by arbitrariness and discrimination in its redistricting scheme. "The problem with this analysis is that it assumes 'politics as usual' is not *itself* a 'traditional' redistricting criterion." *Cox v. Larios*, 542 U.S. 947, 952 (2004) (Scalia, J. dissenting) (emphasis in original). In *Vieth*, all but one Justice agreed that it is a traditional criterion and is constitutional as long as it does not go too far. 541 U.S. at 285–86 (plurality opinion); *id.*, at 307 (Kennedy, J., concurring in judgment); *id.*, at 344 (Souter, J., dissenting); *id.*, at 355 (Breyer, J., dissenting). "The reality is that districting inevitably has and is intended to have substantial political consequences." *Gaffney*, 412 U.S. at 753.

---

[1] A political gerrymander is, loosely, the creation of electoral districts that ignore traditional redistricting criteria solely for the sake of partisan advantage. *Vieth v. Jubelirer*, 541 U.S. 267, 272–73 (2004).

Plaintiffs attempt to bolster their argument with the Supreme Court's summary affirmance in *Larios*, 542 U.S. 947. They argue that the facts of this case are virtually the same as the facts in *Larios v. Cox*, 300 F. Supp. 2d 1320, 1340–41 (N.D. Ga. 2004) *summarily affirmed by Larios*, 542 U.S. 947. In *Larios*, the district court found that the population deviations were not created in response to a compelling state interest, but rather, "[t]he twin goals of regional favoritism and protection of Democratic incumbents led to the underpopulation and overpopulation of certain districts." 300 F. Supp. 2d 1320 at 1334. The court held that these population deviations violated the equal protection clause and that the case did not present a question of political gerrymandering. *Id.* at 1334, 1351.

However, *Larios* is different from this case. *Larios* dealt with state-wide elections whereas this case deals only with Wake County. The broad geographic differences found within a state are not found within one county. The *Larios* court also found widespread targeting of republican incumbents and protection of democratic incumbents. 300 F. Supp. 2d at 1329–30. In *Larios*, fifty-nine incumbents were placed in a district with another incumbent. *Id.* Out of these fifty-nine, forty-seven were republicans. *Id.* In the case before this Court, five incumbents were placed in districts with another incumbent and only three of those five are democrats. There is significant difference in scale between the facts here and the facts in *Larios*. It was plainly apparent in *Larios* that republican incumbents were being targeted, whereas here the targets are less clear. It cannot be said that *Larios* squarely address the question the Court is faced with here.

To claim impermissible political bias is to claim political gerrymandering. To claim political gerrymandering is to raise a claim that is nonjusticiable. *Vieth*, 541 U.S. at 281. Plaintiffs' attempt to dress a political gerrymandering claim in one person, one vote clothing fails

9

to state a claim for which this Court may grant relief. Accordingly plaintiffs' complaint must be dismissed.

B. North Carolina Constitutional Claim.

The right to vote on equal terms is a fundamental right under Article I, § 19 of the Constitution of North Carolina. *Northampton Cnty. Drainage District No. One v. Bailey*, 392 S.E.2d 352, 355 (N.C. 1990). Plaintiffs allege the same supporting facts for their North Carolina Constitutional claim as for their United States Constitutional claim. They allege that citizens voting in overpopulated districts have a vote which is weighed less than those who vote in underpopulated districts, depriving them of the right to vote on equal terms. They further allege that geographic favoritism and targeting of incumbents do not rise to the level of a compelling state interest. These allegations are really those of impermissible political bias.[2]

The *de minimis* deviation rule announced by the North Carolina Supreme Court differs slightly from that adopted by the United States Supreme Court. North Carolina has a plus or minus 5% deviation requirement. *Stephenson v. Bartlett*, 562 S.E.2d 377, 397 (N.C. 2002). North Carolina adopted this standard in order to fulfill the "obligation to ensure that [a State redistricting principle] complies with federal law." *Id.* at 396. As in federal law, *Stephenson* does not mean that a deviation of less than 5% cannot be challenged. Population deviations that weaken the vote of one citizen at the expense of another must be justified by compliance with state and federal redistricting principles. *Stephenson*, 562 S.E.2d at 396–97. Here all of the deviations alleged by plaintiffs are less than North Carolina's 5% rule. The greatest deviations for the numbered districts are +3.63% and -4.19% and for the lettered districts are + 4.9% and - 4.9%. [DE 1 ¶ 54–55]. Plaintiffs allege that these deviations are not justified by compliance with

---

[2] Discussed *supra* Part III.A.

10

state and federal redistricting principles, and, therefore, even though the population deviations are less than five percent, they still violate the North Carolina Constitution.

Although defendants are not protected because the deviations here are less than +/- 5%, plaintiffs' factual allegations amount to a claim of impermissible political bias which is a claim of political gerrymandering.[3] Although the Court has found no North Carolina case law which supports a finding that such a claim is nonjusticiable, the Court is unable to consider the claim. The Supreme Court found that political gerrymandering claims were nonjusticiable because no judicially discernible and manageable standards for adjudicating them exist. *Vieth*, 541 U.S. at 281. Because the facts alleged are the same and the basic political gerrymandering claim is the same for both plaintiffs' federal and state claims, the fact that there are no judicially discernible and manageable standards for adjudicating the federal political gerrymandering claim means that this Court also has no judicially discernible and manageable standards that it can apply to the state political gerrymandering claim. Accordingly, plaintiffs' state constitutional claim is a nonjusticiable one in this Court. Therefore, plaintiffs' state claim must be dismissed as failing to state a claim because a nonjusticiable claim is not one upon which relief may be granted.

---

[3] Discussed *supra* Part III.A.

## CONCLUSION

For the foregoing reasons, defendant State of North Carolina's motion to dismiss [DE 29] is GRANTED, plaintiffs' motion for leave to amend [DE 33] is DENIED AS FUTILE, and defendant Wake County Board of Elections' motion to dismiss [DE 27] is GRANTED. Plaintiffs' claims are DISMISSED in their entirety. The Clerk is directed to enter judgment accordingly and close the file.

SO ORDERED.

This the __17__ day of March, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

12

Case 5:13-cv-00607-D   Document 38   Filed 03/17/14   Page 12 of 12